On October 19, 1995, a pep rally was held for the Indian Valley High School football team. Dawn Anderson, daughter of appellants, Fred and Dorothy Anderson, attended the pep rally. As part of the festivities, a piñata was hung up for the football players to strike with a broom handle. During one strike, the broom handle broke and flew into the crowd. The broom handle struck Ms. Anderson injuring her left eye.
On January 24, 1997, appellants filed a complaint as parents and next friend of Ms. Anderson against appellees, Indian Valley School District Board of Education, the student who struck the piñata, Brian Matthews, and an unknown school district employee, for negligence.
On July 22, 1998, appellee School District filed a motion for summary judgment. Appellee Matthews filed his motion for summary judgment on September 25, 1998. By judgment entries filed November 2, 1998 and November 23, 1998, the trial court granted said motions.
Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN SUSTAINING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT THE DEFENDANT-APPELLEE BREACHED NO DUTY OF CARE TO THE PLAINTIFF-APPELLANT.
II
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN SUSTAINING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT THE DEFENDANT-APPELLEE IS IMMUNE FROM SUIT UNDER OHIO REVISED CODE § 2744.03(A)(5).
 I, II
This appeal is a consolidated appeal from the trial court's entries granting summary judgment to appellee School District and appellee Matthews. Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule has recently been reaffirmed by the Supreme Court of Ohio inState ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
 Claim Against Appellee School District
Appellants claim appellee School District is liable under the theory of negligent supervision which falls under an exception to the sovereign immunity statutes [R.C. 2744.02(B)(4)]. Under sovereign immunity, school districts are immune from their negligent acts if they are performing a governmental function [R.C. 2744.01(C)(2)(c)] which is a discretionary act [R.C.2744.03(A)(3)].
R.C. 2744.02(B)(4) states as follows:
 Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *.
Appellee School District contends the pep rally was held at a local park and not on school property therefore R.C.2744.02(B)(4) does not apply. Appellee School District also contends it had no supervisory power over the "organizer" of the pep rally, the cheerleaders. Neighbor depo. at 16.
Appellants contend the pep rally was a publicized function within the school; the cheerleading advisor, Joan Caviness, supervised and approved the cheerleaders' plans for the pep rally (Johnson depo. at 15); the principal, John Neighbor, and the assistant principal, Randy Cadle, attended the pep rally; Mr. Cadle, whose job it was to discipline the students would have exercised that authority at the pep rally if need be (Cadle depo. at 19, 21); and appellee School District had used the local park on numerous occasions for over fifty years. Neighbor depo. at 14.
Despite the splitting of hairs during Mr. Neighbor's deposition of what was a school function/sanctioned event, we find under the summary judgment standard of review the pep rally was a school sponsored sanctioned event. Because a pep rally during football season is a governmental function as it applies to providing public education and because the pep rallysub judice was "within or on the grounds of buildings that are used in connection with the performance of a governmental function" we find R.C. 2744.02(B)(4) applies. This however does not end our inquiry. Pursuant to R.C. 2744.03(A)(3) and (A)(5), political subdivisions are immune from liability under the following circumstances:
 (3) * * * if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 (5) * * * if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
As is noted in Marcum v. Talawanda City Schools (1996),108 Ohio App.3d 412, 416-417, wherein a student was injured during an unattended student council meeting:
 A classroom teacher has wide discretion under R.C. 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in his or her care. Banchich v. Port Clinton Pub. School Dist. (1989), 64 Ohio App.3d 376, 378, 581 N.E.2d 1103, 1104; Steele v. Aubum Vocational School Dist. (1994), 104 Ohio App.3d 204, 661 N.E.2d 767.
The facts of Ms. Caviness's involvement in the pep rally are as follows:
 1) Ms. Caviness was the advisor in charge of the cheerleaders from July until the end of the basketball season. Neighbor depo. at 17.
 2) Ms. Caviness was compensated as an advisor. Fogler depo. at 9.
 3) The cheerleaders were required to plan and schedule the pep rally and inform Ms. Caviness of it. Ms. Caviness approved the pep rally and was present when the cheerleaders planned it. Johnson depo. at 7; Marstrell depo. at 13.
 4) Ms. Caviness did not participate in making the piñata nor did she provide the broom handle or instructions on how to play the game. Johnson depo. at. 11-13.
 5) Ms. Caviness was present at the pep rally. Bair depo. at 17.
The cheerleaders planned the pep rally, made the piñata and filled it with candy, provided the broom handle, and instructed everyone to stand back in a ten foot radius. Bair depo. at 16, 21.
Upon review, we find Ms. Caviness's acts of directing the cheerleaders to plan the pep rally, permitting the piñata game and being present at the pep rally were discretionary acts and therefore exempt under R.C.2744.03(A)(3) and (A)(5). There is no claim of maliciousness nor any evidence of such. The trial court did not err in granting summary judgment to appellee School District.
 Claim Against Appellee Matthews
Appellants claim of negligence against appellee Matthews is based upon the injury to Ms. Anderson at the pep rally where both Ms. Anderson and appellee Matthews were participants.[1]
Appellee Matthews was a football player drafted by the cheerleaders to attempt to break the piñata.[2] Appellee Matthews was blindfolded, handed the broom stick, spun around and was told to attempt to break the piñata. Bair depo. at 18-20; Marstrell depo. at 11. Unfortunately, appellee Matthews struck the pole the piñata was hanging from. The pole broke the broom handle which flew into the crowd and struck Ms. Anderson.
There is no factual dispute sub judice save for the classification of Ms. Anderson as a participant. The affidavits offered by appellants taken in a light most favorable to them establish the following:
 1) Ms. Anderson was in attendance at the pep rally.
 2) Ms. Anderson had been at the pep rally for some time prior to the piñata game.
 3) Ms. Anderson was a spectator at the piñata event standing with other students and adults outside the circle of the game.
The first step in determining whether there is liability is to determine whether appellee Matthews owed Ms. Anderson a duty for there can be no liability for negligence absent a duty owed to the injured. Hager v. Griesse (1985), 29 Ohio App.3d 329. Under the facts of this case, did appellee Matthews owe Ms. Anderson a duty? As a participant in a game of piñata, appellee Matthews's duty is defined in Marchetti v. Kalishl
(1990), 53 Ohio St.3d 95, syllabus, as follows:
 Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d.
Based upon this holding, if Ms. Anderson's spectator status was that of "participant," then appellee Matthews owed her the duty of not being reckless or intentional in his actions. If Ms. Anderson was not a "participant," then appellee Matthews owed her no duty whatsoever.
There is no evidence in the record that the rules of the game were violated. Appellee Matthews was blindfolded, handed a broom handle not of his making or choosing and was spun around before he attempted to break the piñata. There is no evidence that his acts were reckless or intentional. Even if Ms. Anderson was but a spectator, the doctrine of "primary assumption of the risk" applies "which concerns cases where there is a lack of duty owed by the defendant to the plaintiff. This type of assumption of risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands." Anderson v. Ceccardi (1983), 6 Ohio St.3d 110,114. In addition, there is no evidence appellee Matthews could have foreseen the outcome of his acts. The only foreseeable events would be that he would break the piñata or miss it.
Based upon the undisputed facts, appellee Matthews did not break any duty to Ms. Anderson and could not have foreseen the outcome that occurred sub judice. The trial court did not err in granting summary judgment to appellee Matthews.
Assignments of Error I and II are denied.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed.
By Farmer J., Wise, P.J. and Gwin J. concur.
------------------------
------------------------
 ------------------------ JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment Court of Common Pleas of Tuscarawas County, Ohio is affirmed.
------------------------
------------------------
 ------------------------ JUDGES
[1] Ms. Anderson claims she was not a participant. Nevertheless, Ms. Anderson was present at the pep rally including the piñata event. See, Anderson aff. filed November 12, 1998.
[2] "The piñata was a replica of the opposing team's mascot the idea was to see which senior football player could break it open." See, Statement of Joan Caviness attached to answers to interrogatories filed July 17, 1998.